IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs, March 8, 2011

## IN RE:  ZADA M.

**Appeal from the Juvenile Court for Greene County**
**No. J22232      Hon. Kenneth N. Bailey, Jr., Judge**

---

**No. E2010-02207-COA-R3-PT - Filed April 11, 2011**

---

In this parental termination case the Trial Court, upon hearing evidence, terminated the mother's parental rights upon finding grounds of abandonment and that it is in the best interest of the child.  The mother has appealed and we conclude from the record that the statutory grounds for abandonment were established by clear and convincing evidence, and we affirm the Judgment of the Trial Court.


**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court Affirmed.**


HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.


Jennifer Luther and Leslie Douthat, Greeneville, Tennessee, for the appellant, D.M., and the Guardian Ad Litem.

Robert E. Cooper, Jr., Attorney General and Reporter, and Joshua Davis Baker, Assistant Attorney General, Nashville, Tennessee, for the appellee, The Tennessee Department of children's Services.


**OPINION**

The Department of Children's Services filed a Petition to Terminate Parental Rights of  D.M. and Unknown Fathers, to the minor child, Zada M, (d.o.b. 12/6/06).  The Petition alleged that the child had been adjudicated dependent and neglected by the Court on October

31, 2007, after the child had been taken into emergency state custody on September 5, 2007. The Petition alleges that respondent D.M., the child's mother, is incarcerated at Swannanoa Correctional Institute in North Carolina, and that the child's father is unknown. Further, that the putative father registry has been consulted and that no claims of paternity exist. The Petition alleges that the mother has abandoned the child due to her incarceration, and that she has been incarcerated for four months before the Petition was filed, and is serving a five year sentence for robbery with a dangerous weapon. The Petition further alleges that mother exhibited a wanton disregard for the child's welfare by engaging in criminal activity. The Petition also alleges that the unknown father has failed to establish paternity, to seek visitation, or to pay child support, and that termination is in the child's best interest. The Petition alleges that respondents have shown little or no interest in the child, and that her foster parents are bonded with her and wish to adopt her.

The mother filed an Answer to the Petition, and denied that her rights should be terminated, and asked for a continuance due to her incarceration.

The Court held a hearing on August 3, 2010. Mother's deposition (taken from prison with both attorneys and the guardian ad litem participating) was filed and the mother testified that she was 26 years old, and that the child was taken into custody when she was 9 months old. The mother testified that she had a good life with the child before the child was taken into custody, and that she and the child lived with Timothy Gass, who was the mother's boyfriend, but not the child's father. Further, that she had no prior criminal record.

The mother testified about the circumstances around her criminal conviction, and that she had spent her time in prison bettering herself, and had received a GED, completed a parenting skills class, and completed a Choices for Change Class, which was a drug education course. Finally, the mother testified that she pled guilty because she was told that if she didn't she could get 7 to 15 years, and that 3.5 to 5 years sounded better. She admitted that on the day of the robbery she took oxycontin given to her by Gass. Several other witnesses testified and at the conclusion of the evidentiary hearing, the Guardian Ad Litem made a recommendation against terminating the mother's parental rights, because she said she thought it was sad that the mother never had the chance to reunite with the child.

The Court ruled from the bench, finding that the termination was appropriate and made very specific factual findings regarding the grounds for termination and the best interest analysis.

A Final Decree of Guardianship and Order Terminating Parental Rights was entered on October 19, 2010. The Court found that the child had been in State custody continuously since September 5, 2007, and that the mother was incarcerated in another state and due to be

released in March 2011. The Court found that the child had already been in custody 35 months, during the most formative years of her life for bonding purposes. The Court said that "statistics and studies tell us that a child that doesn't bond with a parent or a parent-like figure in the first three (3) years of their life grows up to have all kinds of emotional disorders, including the lack of the ability to bond and relate to other people." The Court found that the child could not bond with her mother due to her mother's incarceration, and that it was "irrational . . . to expect the Department to wave a magic wand and get this child to bond with the mother."

The Court observed that the mother admitted that she had the child (then 9 months old) in the car with her when the armed robbery was committed, and that two men who were in the car went into a gas station, stole the money, ran back to the car, and sped off. The mother and another lady who was in the car (also with her child) did not go to the police either in North Carolina or Tennessee. The Court found the mother admitted that she was addicted to oxycodone at that time, and was taking it every day.

The Court found that the mother deserved some credit for completing a class called Choices for Change, which met once a week for eight weeks. The Court noted that it dealt with people with addictions on a daily basis, and was very familiar with addiction. The Court stated that when asked if she attended NA or AA meetings, the mother said she did "sometimes", "maybe once a month." The Court found the mother had been in prison for 35 months and had thus attended at most 35 meetings, which "does not symbolize a mother who has turned it around." The Court noted the mother also had two older children who were in the custody of her ex-husband's grandmother at the time all of these events occurred.

The Court found that there was nothing to show the mother had made a significant change, and that when she was released in March 2011, she would need time to get a job, stable housing, etc, which would take several months. The Court found that by that time the child would have been in custody for 50 months, and that for a young child who was adoptable to be allowed to languish in foster care for over four years was doing the child a disservice. The Court found that no one forced the mother to drive the car when a robbery was committed, to take her child along, to fail to turn herself into authorities, or to fail to notify DCS about family resources, and that the situation was of the mother's own making.

The Court found by clear and convincing evidence the mother was incarcerated for four months before the Petition was filed, that she was serving a five year sentence for aiding and abetting robbery with a dangerous weapon, and that she engaged in conduct that exhibited a wanton disregard for the child's welfare. The Court found by clear and convincing evidence the mother's parental rights should be terminated due to the wanton disregard for the safety and welfare of the child. The Court also terminated the parental

rights of the unknown father.

Further, the Court terminated the mother's parental rights on the ground that the conditions leading to removal still persisted, and were unlikely to be remedied at an early date so that the child could be returned to the mother. The Court held the mother had failed to demonstrate that she understood what was necessary to parent a child, or that she could maintain a safe, consistent and stable home environment for the child. Thus, the Court found that multiple grounds existed for the termination of the mother's parental rights.

Regarding the best interests of the child, the Court found that clear and convincing evidence demonstrated that it was in the child's best interests to terminate the mother's parental rights, because there had not been an adjustment of circumstance, conduct or conditions in the mother's life to make it safe for the child to be with the mother. The Court found that at the time of the robbery, the mother was living with her boyfriend, who was also involved in the robbery, and the mother was addicted to oxycodone. She did not have stable housing before her incarceration, and had not maintained regular contact with the child even though she could have sent letters through DCS or her attorney. The Court found there was no meaningful relationship between the mother and the child, and that the only valuable relationship the child had was with her foster parents.

The Court found the child was well-adjusted in her foster home, was involved in gymnastics, ballet, etc., and that the mother had not paid any child support. The Court found that it was in the child's best interests to terminate the mother's parental rights, and that the foster parents were committed to the child and intended to pursue adoption.

Finally, the Court found that DCS had made reasonable efforts to find permanency for the child by preparing permanency plans, attending court hearings, locating a suitable foster placement, conducting staffings and team meetings, and exploring suitable relative resources through ICPC. The mother and the child's guardian ad litem jointly filed a Notice of Appeal.

The issues presented are:

1.      Whether the Juvenile Court erred in finding by clear and convincing evidence that DCS employed reasonable efforts to reunite the mother with the child?

2.      Whether the Juvenile Court erred in finding by clear and convincing evidence that the mother abandoned her child through wanton disregard?

3.      Whether the Juvenile Court erred in finding by clear and convincing evidence

that persistent conditions existed?

4.   Whether the Juvenile Court erred by failing to enter findings of fact and conclusions of law within the statutorily required 30-day time frame following termination of the mother's parental rights?

The Trial Court terminated the mother's parental rights based on abandonment and persistence of conditions. DCS has stated in its brief, however, that since persistence of conditions was not alleged in the original Petition, and the pleadings were never amended to conform to the evidence, DCS waived this ground on appeal.[1]

DCS was required to prove, by clear and convincing evidence, that at least one of the statutory grounds for termination existed, and that termination was in the child's best interest. *In re: C.A.H.*, 2009 WL 5064953 (Tenn. Ct. App. Dec. 22, 2009). Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence", as it "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id., quoting In re: M.J.B.*, 140 S.W.3d 643 (Tenn. Ct. App. 2004). This Court's rule requires us to review findings of fact *de novo* with a presumption of correctness, but we also must determine "if the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights." *Id.*

Tenn. Code Ann. §36-1-113(g)(1) states that one ground for termination is based upon abandonment, as defined in Tenn. Code Ann. §36-1-102. The statutory definitions of abandonment including the following:

A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child . . . and . . . the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.

Tenn. Code Ann. §36-1-102(1)(A)(iv).

---

[1]Following the Trial Court's announced Judgment from the bench, the Trial Court filed an Order to Show Cause, stating the DCS's attorney was to have submitted an Order terminating the mother's parental rights, but 61 days had passed and no Order had been filed. DCS's attorney was ordered to show cause why she should not be held in contempt. The Court issued an Order dismissing the show cause, after DCS submitted the Judgment on October 7, 2010.

We have previously recognized, parental incarceration "serves only as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." *In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005). This Court has also stated:

> The statutory language governing abandonment due to a parent's wanton disregard for the welfare of a child "reflects the commonsense notion that a parental incarceration is a strong indicator that there may be problems in the home that threaten the welfare of the child" and recognizes that a "parent's decision to engage in conduct that carries with it the risk of incarceration is itself indicative that the parent may not be fit to care for the child."

*In re: C.A.H.*, 2009 WL 5064953 (Tenn. Ct. App. Dec. 22, 2009).

Thus, when parental incarceration is coupled with "a broader pattern of conduct" prior to incarceration that exhibits a wanton disregard for the welfare of the child, the statutory ground has been met.

This Court recognized in *In re: C.A.H.*, that "[n]umerous cases have held that a parent's previous criminal conduct, coupled with a history of drug abuse, constitutes a wanton disregard for the welfare of the child", and that "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *Id., quoting In re Audrey S.*

In this case, as the Trial Court found, the mother had a history of drug use, and by her own testimony, established that she was addicted to oxycontin at the time the child came into custody. She was using it daily. She admitted that she started using oxycontin when the child was only 3 months old, and that the child was with her at the time of the robbery, and she was on oxycontin.

The mother's reckless behavior with an infant clearly exhibits a wanton disregard for the child's welfare and safety, and this coupled with her three year incarceration, clearly and convincingly establishes that the ground of abandonment, as discussed above, was proven.

The mother argues the Department did not prove that it made reasonable efforts to make it possible for the child to return to the mother. We have previously ruled, however, that DCS has no obligation to make reasonable efforts when termination is based on the ground of abandonment. *In re: C.A.H.* This issue is without merit.

-6-

The mother did not appeal the Trial Court's finding that termination was in the child's best interest. Thus, having determined that the Trial Court's termination based on abandonment was proper, the Trial Court's judgment will be affirmed.

Finally, the mother argues that, pursuant to Tenn. Code Ann. §36-1-113(k), the Trial Court is required to enter an order making specific findings of fact and conclusions of law within thirty days of the hearing, but in this case, the Trial Court's order was not entered for 76 days. DCS argues that while the delay in entering the order is "unfortunate", it does not warrant reversal of the Trial Court's decision.

The precise issue was decided by this Court in the case of *In re: M.R.W.,* 2006 WL 1184010 (Tenn. Ct. App. May 3, 2006). In that case, the trial court did not issue its order terminating parental rights and making specific fact findings for over 60 days. The appellant argued that the statutory provision cited above was mandatory, and was akin to a jurisdictional requirement. *Id.* We disagreed, stating that the statutory provision regarding the time frame was directory, and merely evidenced the legislature's intent that parental termination cases be handled expeditiously. *Id.* That Court found that, where the trial court failed to enter the order within thirty days, the order did not have to be vacated, and the failure to comply with the time frame did not warrant reversal. We hold this issue is without merit.

The Trial Court's judgment is affirmed and the cause remanded, with the cost of the appeal assessed to the mother, D.M.

_____
HERSCHEL PICKENS FRANKS, P.J.